We will hear argument next in No. 23-1912, Xerox v. Meta Platforms. Good morning, Your Honors, and may it please the Court. Lauren Simenauer with Nicole Smith for Xerox. The Board misconstrued the displaying term in Claim 9 by starting with the dependent claims and then working backwards. So today, Xerox asks this Court to give the displaying term its proper construction, which requires the display of both the tag address and the recipient address. And under that construction, Claim 9 was not disclosed or rendered obvious by Meta's four prior art references. So can you start by addressing the untimeliness argument, which seems, as I understand it, but you correct me if I'm wrong, that in your opposition, your patent owner response, you didn't question the case for obviousness for this limitation at all? Yes, Your Honor. We did not raise the displaying term in the patent owner response. That's because the significance of the displaying term really only percolated to the surface after Meta's reply, where Meta essentially shifted theories of obviousness, and it became clear to us that under their theory, the recipient address did not have to be included in the header at all or on the envelope at all, and that made it clear that nothing was going to be displayed to the end user. So at that point, as soon as Xerox realized it, Xerox raised the issue in the SIR reply. And importantly, is that the reason the board granted you the right to file SIR? You don't usually get a SIR reply, do you? Did you have to move for leave to file a SIR reply? I don't want to speak out of turn. I believe so. I'll double check and get back to you on that. Well, if you had to move for leave, what was your reason to move for leave to file a SIR reply? I'm sure that it was because we interpreted Meta's reply as shifting obviousness theories, and we did want to address the issue, but I am being told there was no leave. So you just filed it, and they took it? Yes. Okay. But in any event, we didn't waive claim construction of the displaying term, because not only did we raise it in the SIR reply, Meta actually litigated it at the hearing, and then the board— But the problem, I mean, the problem I think Meta says, to tell me why there is something wrong with this, the point of making, of insisting that arguments be raised early in the process is that there is a regularly scheduled response to those arguments, and if you're not making an argument, then that response is not going to include the kind of material that eventually at the oral hearing, Meta had to stand up and present, I don't know, with slides or however, but in any event, not in its reply. That's right, and I think that here it's important to remember the guidance from SAS, which is that the petitioner's petition needs to guide the life of the IPR. So the petitioner, Meta, did not raise claim construction, and only in Meta's reply was Xerox able to determine, okay, based on their shift in obviousness— I mean, in the ordinary course, when a petitioner says, element 1C is shown in this piece of prior art, and it does the usual claim mapping thing, and it doesn't have to particularly say, and here's an explanation of how we understand this term, and then the patent owner response says, no, no, no, no, that prior art does not show 1C, and the reason is that you're misinterpreting it. Isn't that the right stage for this to occur? So that in reply, the petitioner can come back and say, oh, this claim construction that the patent owner is putting forward is wrong. Your Honor, that is typically what happens, and I won't pretend like this was not unusual. But, I mean, their petition must have addressed the displaying limitation, right? You're not saying they didn't address it at all. They must have said, here's where it's shown in the prior art, and you had an opportunity to respond and say, no, it's not shown in the prior art. The petitioner addressed the displaying term and said that it was not necessary to construe the term, and the parties agreed that we would all— Well, what was your response to their petition on this displaying limitation? Did you dispute that the prior art showed it or not? At the time, we did not dispute that. I mean, that's the time to dispute it, right? I mean, if you had an argument, then you should have come back, and then they could have put it in their response instead of having the need for a server fly. Yes, Your Honor, again, this is unusual, but this court's precedent has provided that after a petition, if the significance of a claim term comes to light, then the parties and the board can raise— I think the significance is plain on the face, right? I mean, they're pointing to the prior art that says, here's what shows the displaying message. If you had looked at that and said, oh, that prior art doesn't show the recipient and tag addresses. It only shows—is what you think it shows just the body of the message? Is that— So, and that's an important point, because up until the reply, the parties were arguing, or Xerox assumed— Your Honor, ask me, what in the prior art do you think it doesn't show that you were unaware of until their argument arose later? Sorry, that was super inarticulate. You get this—you have this displaying the incoming message limitation. They point to something. What is the prior art they point to show, and what do you think's deficient with it? So, they pointed to a combination of Hyloff, RFC 5233, Low, and NotBrakesMeYet. All of those just for the displaying limitation? I believe so. I'm going to have to verify and come back up on rebuttal. I appreciate that, again— You're not answering what my question is. I'm sorry. I don't mean to be so short, but it seems to me that what the point was, you're not saying that none of this prior art shows displaying a message at all, are you? It displays something. It just doesn't display a message with the recipient address and tag address. Yes, it's Xerox's position that none of the prior art— So, why, when they cited all that art, could you not have looked at that and said, well, it displays something of a message, but it doesn't display the recipient address and tag address? What prevented you from knowing of your position on that claim construction? Or is it just you realized you were losing on this, and you found another way to distinguish it in the certify? Respectfully, and it's possible that we could have done that, but Xerox was focused on— If you could have done it, then you should have done it. I think the board's entirely right. If it was available to you at the time you filed your response, then you're untimely. The only reason you should be able to do it in a certify if it's something that is dramatically new. And it doesn't sound to me like you're saying there is anything dramatically new. They put this limitation in their petition. I don't have the petition. I mean, I have it. You can point to me if you think it was unclear on that point. They pointed to the prior art. Why couldn't you have said this prior art doesn't show the recipient address and tag address in your response? And I think that just at the time, our position was— the parties were very focused on what the incoming message actually had in it, and maybe there were assumptions made that that would mean that they be displayed to the end user. But regardless— I mean, if you don't— These cases are really complicated with lots of different limitations, and they have to go through and put every single limitation in and show where it is in the prior art. If you don't respond to something in saying it's not there, then aren't they entitled to think you conceded that point? So we're done with that point. We're going to reply to the points you're arguing. I think under exonics, the significance of a claim construction can arise later. And then taking that a step further, O2 Micro says that whenever a dispute is raised, the court has to—the board has to decide it. And that doesn't have a temporal limitation. So under that framework— I think that reads O2 Micro a little too far. I think you can certainly waive a claim construction argument if you make it too late. And I think that making it in the SIR reply is evidence that Xerox was not— But the board found it was too late. What's your view? Do we review the board's determination that it was untimely? Isn't it an abuse of discretion? So the case law that counsel shared with us a couple of nights ago suggests that it's abuse of discretion if the board makes a determination based on its own rules for an obvious misfinding. Our position is that— This is core photonics? Is core photonics the kind of— Oh, I think it was LIS. Okay. It was disclosed a couple of nights ago. Sorry, pardon me. LSI Corporation versus Regents of the University of Minnesota. And that case just addresses timeliness in the context of an obvious misfinding. I think it's important to consider this in the context of claim construction, which O2 Micro says is a different inquiry, and this court has de novo review over. But even under— You're getting there. Sorry. Say why it's an abuse of discretion to find this untimely. Oh, okay. It's an abuse of discretion to find this— Pardon me. It is— If we find it abuse of discretion standard applies, what's your argument on why it's an abuse? If the board held— It's an abuse to hold our argument untimely, because O2 Micro and its progeny, Canoco, compel us to review claim construction arguments if the dispute is raised, and the parties have— In a timely manner. I'm sorry, you can't use O2 Micro to read out a timeliness requirement. Otherwise, you could raise claim construction any time at all, including in a motion for reconsideration, and clearly we're not going to allow that. There has to be a timely claim construction being raised. I agree, and I think the key determination here— So you can't answer the abuse of discretion argument with O2 Micro. Why was it an abuse of discretion for the board to say it's just too late? Because the board ultimately decided claim construction. Well, that's what lower tribunals do all the time. They make their finding, and then they make an alternative finding, so we have something to review if we disagree with them. The fact that they made an alternative finding doesn't mean that it was an abuse of discretion to make the first finding, does it? I'm not aware—No, it does not. But I'm not aware of any case where the lower court— where the board actually decided claim construction, and then being informed by the party's arguments, and then this court said that that was untimely. But the board said it's untimely. Our job is not to say de novo whether it's untimely. The board said it's untimely. We review that for abuse of discretion. If we disagree with them and find an abuse of discretion, then we review their claim construction that they made. But if it's not an abuse of discretion, then where do we go? But their timeliness determination was in direct conflict with O2 Micro and Canopo. If that's your argument, you lose that point with me. Well, even accepting the correct claim construction— or, pardon me, the board's claim construction. Substantial evidence doesn't support a motivation to combine, because that would require starting with a reference that was designed to reduce emails, layering on three additional references, and ending up at an agglomeration where you get more emails. And the board not only arrived at its obviousness finding, even under its own construction, by ignoring that the prior art taught away from the proposed combination, but it also credited disclosures that META either did not rely upon or to which Xerox didn't have an opportunity to respond. Just a reminder, does this combination argument apply to the displaying limitation, the receiving limitation? What was the combination used for? Yes, Your Honor. It was used for the receiving limitation, receiving an incoming message with a recipient address and adding one or more users to a content tag. I also see that I'm in my rebuttal time, and I did want to save some. I'll give you the rebuttal time back, but not if you keep going for a long time. I should have just gone through. Right, so the board found that Hyde Loft doesn't disclose adding a recipient address to this publishable message that goes to a shared content source, and that whole system is based on natural language processing. It states in Hyde Loft that there's an indication that Hyde Loft is not a normal message, and essentially the board relied on this disclosure that was not identified as going to the receiving limitation that says that, well, Hyde Loft further allows for receipt of a user-provided natural language destination address value. If Xerox had had an opportunity to respond, we would have said that the very next line says that the natural language destination address value can include free text, and that that free text is then matched with these categories. Again, I think that goes to the greater point of Hyde Loft teaching expressly away from this kind of combination, because Hyde Loft allows a user not to receive emails to their personal email address, but to go to the shared content source and pick out emails that they might be interested in. The board also credited a lawyer argument that it would have been obvious to include the recipient address at least sometimes. That's classic hindsight to me. And then secondly, the prior art does not disclose or render obvious adding a recipient to the at least content tag. This is an even more egregious example of what Hyde Loft was expressly designed to avoid. So not only is a user receiving an incoming message, they're receiving this incoming message, they might not have even given their permission to be forwarded this email to their personal email address. They're receiving an incoming message, and then they receive notifications that they've been added to this conversation address. And Xerox pointed out, and the board didn't really address, that that goes against Hyde Loft's teaching against spam and flooding. Hyde Loft expressly says the downsides of traditional email systems were spam, were being shown emails that you didn't want to see. And so this technology allowed a user to seek out messages they were interested in based on their own autonomy. I think you should probably wrap up. And with that, I yield the rest of my time. Okay, thank you. Good morning, Your Honors. Heidi Keefe on behalf of Apelli. Your Honors got the issue exactly right regarding waiver. We did, while preparing for this hearing, we did come across the LSI case, and I just want to make sure that that's in the record with citation. That's LSI Corporation versus Regents University of Minnesota, 43F4, 1349, which stands for the proposition that unless the issue of timeliness was raised on appeal, it is forfeited. And so this is a very clear example of exactly what happened here. The issue of timeliness was not raised here on appeal. They simply said at one point in the briefing, I think at pages 34 and 35 of the blue brief, that, well, because the court engaged in claim construction, we're okay engaging in claim construction. They didn't address the timeliness issue at all, and so it's forfeited. Here, though, just to answer. Even if we address it, do you agree that's an abusive discretion standard? Absolutely, Your Honor. And that's clear both from LSI and from the in-ray Google technologies case that we cited in our brief. It is definitely an abusive discretion standard. And here, the board below specifically applied its rules that says that you're not allowed to come up with a new argument. Here in surreply, just so Your Honors are clear, the surreply is allowed only for observations. In other words, if something happened during the testimony when you took the expert's declaration after the reply was filed, you're allowed to file observations and sort of point to, here's a quote that I want you to make sure that you look at. It's not a point to raise brand-new issues for the first time on appeal. And that's exactly what the board said and what the board found when they went back and looked at the response and found that there was nothing in that response. One of the only things that I would also – Can you – and I assume in your actual petition on this, you specifically addressed this displaying claim, right? We absolutely did, Your Honor. In fact, the displaying claim was addressed in the petition at pages 126 and 127, which came after all of the conversation about everything, about where the recipient address was, where the tag address was. And it was always clear from the petition that those two addresses were actually in different places. And in fact, the argument was always there that the tag address was separate. The tag address was in the envelope and the recipient address was in the header. So they knew that they were in – So this is – I mean, starting with 126, this says – this doesn't – limitation doesn't add anything not already discussed. What here would point the patent owner back to what page for what the display of the incoming message is? Well, so everything above, which described what the recipient address was and what the tag address was, and that's all in 9A, in the discussions for 9A, discussed the fact that the tag address is in the envelope and the recipient address is in the header. And that's actually something that Judge – let me get his name right – Galligan specifically pointed to during the oral argument. Judge Galligan asked, but I'm looking at the petition, the envelope's all over the place. Why couldn't this argument that the envelope is different from the header be made in patent owner's response? That's at Apex 455. Patent owner at that point said – the petition itself said the tag address was in the envelope and the recipient address was in the header. So they admit that they're put in two different places, and yet they never made any argument that the display had to be in one place. And not in two different places. Judge Galligan goes on to say, it sounds like they made the contention that these are in two different places, yet you waited until the SIR reply to point out that, that that wouldn't meet the displaying limitation. And that goes between Apex 455 and Appendix 456, lines 20 on 455 through 3 on 456. So on the merits of that claim construction argument, what's your best argument that the – is it the incoming message? Is that the claim language? Yeah, the claim language specifically is the incoming message. Displaying the incoming message and earlier the incoming message is supposed to have these two things. So it says that you receive a message with a recipient address and a tag address. The limitation of displaying the incoming message does not say display the entire incoming message. It does not say display the incoming message with these addresses. It just says display the message. So tell me, this is what I'm remembering when I was reading your brief and the board's decision. The board, I thought, made a point that with does not necessarily mean as part of.  It just means along with. I don't remember that you made that point in your brief. I don't know that we did. However, we did make the point that you can, for example, display a car that has an engine without displaying the engine or displaying a car that comes with some instruction manuals without displaying those instruction manuals. We definitely made that argument. And so I think that goes directly onto the same thing, that you don't have to show every single thing that's included with something to have displayed it. And then the board and us showed that that's further supported by looking at the dependent claims, which talk about other things that must be displayed in order to accomplish Claim 9. So Claim 9, as your honors know, has to be broad enough to encompass all of the dependent claims. The dependent claims also require displaying all of the other messages received. And that's in Claim, for example, 14, displaying a list of all of the received messages. And that's only in Figure 6. And I think your honors spoke a little bit earlier to Figure 6. I did want to get back to Figure 6. And that is why I wanted to bring it up. Figure 6 is the only embodiment that actually shows displaying a list of incoming emails. And that's in 97. And the specification clearly tells us that 97 are the list of incoming emails. Figure 6 also shows the recipients and the tags, which are also required to come with the email message. But it doesn't list out the at and then the symbol following it. And so if you were to require that the full tag address and the full recipient address be a part of every displaying limitation, which, again, we think was late, that would read out Figure 6. But the specification makes clear that Figure 6 is an example of how you see these messages that have been coming in. Right, and just to see if I understand this correctly. So Figure 6 itself is not the message. Figure 6 is a different screen that includes two messages, both of them given the same number, 94. It displays many things. A variety of other, but only two messages. Yes, it displays two messages. The first message is listed as 94. The second message doesn't actually have a number attached to it at all. So those are two separate messages. And you can tell by the box that is used. I highlighted mine in blue. And you can tell by the box it's used to circle message 94. And then below is another message. The specification describes that as, basically, this is a discussion board happening. And this is a message where someone says, we recently installed that. Hey, there's a training session. Come on, let's take a look at all this. And do I remember right that the patent never suggests that the appearance of the message in this screen would be different from the appearance to the recipient when the message was received? It does not. It does not say one way or the other. It just uses this as an example of how you can display a message to the user. And that language is very clear in column 8, affix 655. Each email message 94 displayed can also include an email header, email content, et cetera. So this is very specifically talking about exactly what we're saying. So we believe that it is the proper construction, not just because we win on forfeiture, but because this is also the proper construction. Can you turn to the second issue about the challenge to the board's finding that these several references would be combined in the way that you're using? Yes, Your Honor. Largely because of the flooding of your inbox. Yeah, their biggest argument, or principally their only argument, is that somehow Hydloff teaches away from the combination. But the problem is that's not actually what Hydloff says. What Hydloff says in its first paragraph, and this is 765 starting at line 22, is publication by email, in other words, everybody's email all the time, to multiple recipients is problematic in that the resulting email messages appear in the destination user's inboxes even if they are not important.  This is column what? I apologize. Column 1. Yeah. The sentence that starts at line 22. Okay, thank you. The part that is the most important is to start at line 24, even if they are not important to that receiving user. This may cause a flooding problem in the inbox. So flooding is only that which you don't want. And so the point is you might get too many things that aren't of interest to you. That causes flooding. The combination is specifically geared to only sending you the things that you desire, categories that you have subscribed to or that you have said are interesting. That's what Hydloff wants to do. It wants to get you things that you're interested in. That's what the entire combination is set up to do. Rigsby says that... Did the board point to that particular distinction in responding to the argument against the combination? No, the board did not point to that distinction. That's something I'm raising for your honors. The board pointed to the fact that even if you were to credit flooding as a problem, that there are always both tradeoffs and benefits that can be found from any combination. And what the board found was that the flooding problem could be solved by virtue of the fact that you're using Rigsby's newsletter. So you're not really flooding the recipient at all. You're sending them one message that includes things that might be important to it, and that that one message is not a flooding situation. That's what they were saying. And so that's what the board said in its acknowledgement that this would actually be something that a user would want. Because here, the newsletter that Rigsby teaches, and you put that in combination with Hydloff, you're saying, here are the things I'm interested in. You combine that with Rigsby, and Rigsby says, I'll look at those categories, and overnight, I'll send you a digest or a newsletter of only the things that have come in that are of interest to you. That's something that would be of benefit to users because it would limit the things that are in their inbox to things that are wanted by them. And that's why I point back to Column 1. That wasn't even the problem that Hydloff was trying to solve in the first place. But the board definitely had substantial evidence by virtue of how they said that the digest alone would mean that there's only one email. The board also pointed out the possibility of unsubscribing and all of the other things that are also listed in the combination. If Your Honors have no other questions, I very much appreciate your time. Thank you, Your Honors. Your Honors, first I have to state that Xerox did not waive its timeliness arguments. Xerox discussed the board's finding of timeliness on page 17 and page 39 of its opening briefs. But going into this discussion of what the petition actually said, my esteemed friend said that everything above in the petition discloses the argument about the envelopes. It's actually not so. If you go to Appendix 126, the petitioner states nothing about anything that's supposed to be included in the envelopes. In fact, this section on displaying the incoming message to the at least one users associated with the at least contact tag says nothing about displaying the content tag. It refers to this Rigsby categorization system where documents can be grouped for displayed purposes, so displaying purposes, pardon me. So the first time Xerox became aware of this argument was actually in Meta's reply. And actually, I've been told that the PTAB has now adopted sir replies without leave for everyone. Wait, where in Meta's reply? What did they reply to? If you didn't address anything in your response, what were they replying to? In our response, we were talking about what had to be included with the incoming message, and that led into a discussion about what is on the outside of the envelope and what's inside the header of the envelope, and that's what Xerox was. And in their reply, Meta took the position that you didn't need to have the recipient address in the header. You didn't need to have it in one place or another, and that's what prompted Xerox to realize, oh, that would mean it wouldn't be displayed at all. Now it's not in line with the plain language of Claim Term 9. And then finally, I wanted to talk a little bit about Figure 6 and Figure 4. There's no evidence that Figure 6 is an embodiment. Figure 6 is described in the specification as a screenshot showing a web page association, and that can include emails. There's no evidence that it's referred to as an embodiment. And regardless, we are not permitted to limit claims to their embodiments, particularly where there's no preferred embodiment identified, certainly not where there are multiple figures that could represent the incoming message. This wouldn't be limiting, though. I mean, their point is that something that you said is required is not actually required. And here's an example. Assuming it's an embodiment, it doesn't include it, so the claim is broad enough to include a display that lacks a particular piece of information. I see. And their argument is that because Figure 6 reads on some of the independent It doesn't show an address. Right. And my response to that is that conflicts with the plain language of Claim Term 9. And when you have, even if it were an embodiment, which it is not, if you had an embodiment that conflicted with the plain language, the plain language predominates. And here we've got the claim language that says that an incoming message has to be with a recipient address and a tag address. My esteemed friend said, well, you can show a car, a car that has an engine without showing the engine. That may very well be true, but But a message is not that kind of thing. A message is not that kind of thing. I would compare this situation to showing a car with its license plate. And regardless, the claims tell us what needs to be shown. It tells us that we need to show the recipient address and the tag address. And unless you have more questions for me, I yield my time. Thank you so much. Thanks to both counsel. The case is submitted.